### GREGORY v. DUCKER.

1. The record of a chattel mortgage in the county where the mortgagor then resided, is constructive notice to purchasers of the mortgaged property all over the State.

2. In action by mortgagee after condition broken to recover some of the mortgaged chattels from a purchaser from the mortgagor, the defences were a general denial, purchase for value, without notice, under the provisions of the recording acts, and payment. *Held*, that the answer raised only legal issues, and that the Circuit Judge erred in setting aside a verdict for plaintiff, ordering a new trial, and of his own motion directing plaintiff to bring in as additional parties other purchasers of other chattels included in the mortgage, so that defendant might pre-

sent as a new defence the proper order in which these several chattels should be sold by plaintiffs. And such order is appealable.

Before Pressley, J., Sumter, October, 1888.

This was an action of claim and delivery by H. J. Gregory & Co. against Ducker & Bultman, commenced July 28, 1888. The opinion states the case.

*Mr. John T. Green,* for appellant.

*Messrs. Earle & Purdy,* contra.

June 24, 1889. The opinion of the court was delivered by

Mr. Justice McIver. This was an action to recover the possession of two horses, which the plaintiffs claimed under a mortgage, the condition of which had been broken. The defendants in their answer set up three defences: *First.* A general denial of all except the formal allegations of the complaint, as to the co partnership of the plaintiffs and defendants respectively. *Second.* The plea of purchase for valuable consideration without notice of the mortgage under which the plaintiffs claim. *Third.* That the debt secured by the mortgage has been paid, and the mortgage thereby extinguished, which defence is stated in the following language: "That the defendants are informed and believe that the plaintiffs have seized and converted to their own use three horses covered by the mortgage set out in the complaint, of the value of six hundred and fifty dollars, and that the note mentioned in the complaint has been thereby paid," and, as it seems to us, this language can only be construed as setting up as a defence payment of the mortgage debt, and a consequent extinguishment of the mortgage upon which alone the claim of the plaintiffs rests.

The testimony tended to show that on the 28th of May, 1888, in the city of Columbia, the plaintiffs sold and delivered to one Adams six horses for the sum of eleven hundred and fifty dollars, five hundred dollars of which was paid in cash, and the balance—six hundred and fifty dollars—was secured by a note of Adams, payable thirty days after its date, together with a mortgage on

the horses, under which the plaintiffs claim possession of the two horses now in controversy. It also appeared that the plaintiffs, being informed that Adams resided in the County of Sumter, at once had the mortgage duly recorded in that county. It further appeared, on the cross-examination of one of the plaintiffs, that they had found five of the six horses—two in York County, which were seized by the plaintiffs under the mortgage, and one or both of them sold, but not for an amount sufficient to satisfy the mortgage debt; another in Clarendon County, for which an action similar to the present is now pending; and these two in Sumter County, for which the present action is brought; but what became of the sixth horse, does not appear.

It is quite clear that, under the first defence, the only issue raised was as to the truth of the material allegations of the complaint, about which there does not seem to have been any controversy, and, under the testimony, if believed, could not have been. It is equally clear that the only issue raised by the third defence was whether the mortgage debt had been paid by the seizure and sale of the two horses (if, in fact, they were both sold), and the mortgage thereby extinguished. As to this issue also, there does not seem to have been any real controversy, and could not have been if the undisputed testimony was credited; for, even assuming that both of the horses seized in York County were sold, although the testimony leaves some doubt as to whether both or only one had been sold, it is quite certain that there is no testimony to show that the proceeds of such sale were sufficient to pay the mortgage debt; for if those two horses were sold for $145 and $153, respectively—the only amounts mentioned in the testimony—that would not be sufficient to pay one-half of the principal of the mortgage debt.

So that the only real issue in the case was that raised by the second defence: as to whether the defendants had notice of the mortgage at the time they bought the horses in controversy from Adams. As there was no testimony that the defendants had actual notice of the mortgage, the only question was whether they could be charged with constructive notice, arising from the record of the mortgage in Sumter County; and this depended entirely upon the question of fact, whether Adams resided in the County

of Sumter at the time the mortgage was executed. It is very manifest that the real controversy in the court below was as to this question, upon which the jury were instructed in terms to which no exception has been taken. The jury having rendered a verdict for the plaintiffs, defendants immediately gave notice of a motion for a new trial upon the minutes of the court, based upon two grounds: "1st. That this is an equity case, and should have been tried by the court. 2nd. That the preponderance of the testimony shows that H. R. Adams was not a resident of Sumter County when the mortgage was made." On hearing this motion, the Circuit Judge, without considering or determining the second ground, passed the following order:

"The answer in this case having set up an equitable defence, and it appearing at the trial that the said defence is, at least in part, made out, and being satisfied that complete justice cannot be done under the verdict rendered by the jury, and is a case that should be tried by the court, it is ordered, that the verdict rendered by the jury in this case be, and the same is hereby, set aside, and a new trial granted. And it further appearing that other persons claim an interest in the horses described in the mortgage mentioned in the complaint, other than the defendants herein, it is further ordered, that the plaintiffs do amend their summons and complaint, and make all persons claiming an interest in any of the horses described in the said mortgage, parties defendants to this action, and that the case be placed upon calendar 2 of the docket of this court, so that the equities of all the parties, claiming any interest in the said horses, may be settled."

From this order plaintiffs appeal upon the several grounds set out in the record, which, under the views we shall present, need not be repeated here.

It will be observed that the Circuit Judge, in the order appealed from, does not express or even intimate the slightest dissatisfaction with the finding of the jury on the only question of fact seriously controverted in the court below—whether Adams was a resident of Sumter County at the time the mortgage was executed—and hence we must regard it as a fact established in the case, that he was a resident of that county; and from that fact the legal consequence necessarily followed that the record of the

mortgage in Sumter County affected the defendants with constructive notice.   But, on the contrary, the verdict is set aside wholly upon the ground that the answer sets up an equitable defence, which, in the opinion of the Circuit Judge, being "at least in part made out," he deemed it necessary, in order that complete justice should be done, that a new trial should be granted, and that all persons who claimed an interest in any of the mortgaged property should be made parties, and the case tried, as an equity cause, by the court and not by a jury.

We are unable to discover any equitable defence set up by the answer.   The action was an action at law, pure and simple, and the first defence—the general denial—was clearly of the same character.   As to the second defence, while it may be true that the plea of purchaser for valuable consideration without notice may ordinarily be said to rest upon equitable principles, yet when, as in this case, it rests upon the express provisions of the recording acts, it seems to us that it must be regarded as presenting simply a legal issue.   Under our registry act (section 1776, General Statutes), a mortgage not duly recorded is practically null and void—is no mortgage—so far as subsequent creditors or purchasers are concerned ;   and this is so without inquiry into the equities of the parties, but simply as a matter of express statutory enactment.   Hence, where, as in this case, a party seeks to recover possession of personal property, claiming through a mortgage, if the defendant undertakes to defend by showing that he is a subsequent purchaser for valuable consideration without notice, his defence does not rest upon any equitable principle, but upon his legal rights as declared by statute.   He assails the validity of the mortgage, just as if he had undertaken to show that the mortgage was a forgery, or that it had been rendered void by an alteration, or in some other way.   We do not think, therefore, that the second defence set up in the answer presented any features of equitable cognizance, but raised simply a legal issue.   The third defence, as we have said above, only raised the issue as to whether the mortgage had been discharged by payment of the debt which it was designed to secure, and that, too, was a clear legal issue.

It may be true that, where a mortgage covers various different

articles, or several distinct tracts of land, and the mortgagor has sold the same to different persons at different times, the first purchaser, under the rule laid down in *Norton* v. *Lewis* (3 S. C., 25), recognized and followed in *Lynch* v. *Hancock* (14 S. C., 66), may have an equity, *upon proper allegations and proofs*, to require the mortgagee to sell the property in the inverse order of the sales by the mortgagor, but in this case we find no such allegations or evidence. But, in addition to this, it is quite clear that a defence resting upon such an equity is wholly different from any of the defences set up in the answer, and it was error, therefore, after the case had been tried on the issues presented by the defendants and decided against them, to allow, or rather require, an amendment for the purpose of enabling the defendants to present an entirely new defence. *Whaley* v. *Stevens*, 21 S. C., 221; *Kennerty* v. *Etiwan Phosphate Company, Ibid.*, 226. An order thus changing the entire nature and scope of the action after it had been tried on the issues as framed by the parties, by the Circuit Judge of his own motion, is erroneous. *Skinner* v. *Hodge*, 24 S. C., 165.

From what has been said, it follows that the position taken by counsel for respondents, that the order is not appealable, cannot be sustained. The plaintiffs having established their mortgage, and the breach of the condition thereof, were unquestionably entitled to recover possession of such of the mortgaged property as was found in the possession of the defendants, unless they could make good some one or all of the defences set up in their answer; and as it was ascertained by the verdict of the jury that they had failed to do so, and as that verdict has not been set aside upon any ground which authorizes the Circuit Judge so to do, it follows necessarily that the plaintiffs were entitled to judgment on the verdict.

The judgment of this court is, that the order appealed from be reversed and set aside, and that the case be remanded to the Circuit Court in order that judgment may be entered in conformity with the verdict.