ARMSTRONG v. AUSTIN.

1. INDEX OF RECORD—MORTGAGE.—Failure on the part of the register of mesne conveyance to index a mortgage deed, does not invalidate the recording if otherwise proper, but may subject such officer to an action by a party injured thereby.[1]
2. LOSS OF INDEX.—The mere fact that the index book to certain records cannot be found, does not prove that the records have not been indexed.
3. RECORD OF MORTGAGE—CHATTEL MORTGAGE.—Prior to 1882, 17 Stat., 1053, a mortgage of personal property and real estate was legally recorded in a book used for recording liens and mortgages.
4. AFFIDAVIT.—In this State it is not necessary for an affiant to sign an affidavit.

---

[1] For index as part of records, see, also, *Dewey* v. *Sugg* (N. C.), 14 L. R. A, 393, and *note*.

5. EXCEPTION.—It is error in Circuit Judge to consider a point not raised before master, not passed on by him, and not raised by exception to his report.

Before BENET, J., Camden, January 30, 1895. Reversed.

Action by John A. Armstrong against Robert Austin for foreclosure of mortgage, commenced August 21, 1891. Judgment for defendant.   Plaintiff appeals.

The following is the master's report:

This is an action for the foreclosure of a mortgage on real estate.   In 1871 John Goff and others gave a mortgage of the real estate in question to the plaintiff, J. A. Armstrong.   Subsequently Goff sold part of the land to the defendant, Robert Austin.   The defendant, Austin, sets up the plea, first, that he was a purchaser without notice of encumbrance upon the land, that the mortgage was not recorded in the book in the office of the register of mesne conveyance, kept for the purpose of recording deeds and mortgages, and that the law required them to be so recorded in separate books.   By reference to the mortgage, it will be seen that it was recorded in "Lien and Mortgage Book" No. 2, pages 356 and 357.   Now, I can find nothing in the General Statutes of this State in force at that time requiring the clerk to record mortgages of real estate in a book separate from mortgages of personal property.   This mortgage is a mixed mortgage, and by reference to the set of books in which it was recorded, it will be seen that it was the custom at that time to so record mixed mortgages in this set of books.   So I hold that Robert Austin had constructive notice of the mortgage, and bought subject to it.   Another defense raised by defendant's attorney is that the mortgage was not properly probated, the affidavit not being signed.   The following is a copy of the affidavit: "South Carolina, Kershaw County.   Personally appeared Wm. M. Shannon, and made oath that he saw J. A. Armstrong, John Goff, W. W. Goff, Sarah Yates, and Margaret Goff sign and seal the within lien and mortgage, and that he, with Arthur

P. Linning, witnessed the execution thereof. Sworn to before me, this 13th day of February, A. D. 1872. C. Shiver, Clerk." Under the head of "Affidavits," in vol. 1 of the American and English Encyclopædia of Law, I find it laid down, that the signing of an affidavit is not necessary, unless it is required by statute, that the party making the affidavit sign it. While it is the custom in this State for affidavits to be signed, I can find no statute requiring it. So I hold that the probate of the mortgage in question is properly executed. The case of *Woolfolk* v. *Graniteville Manu. Co.*, cited by defendant's attorney, does not apply here. There the party who took the affidavits was not duly qualified to take an affidavit in this State. In the Revised Statutes of South Carolina, adopted in 1872, under the chapter of "Clerks of Court," sec. 15, the clerk is empowered with the authority to administer oaths, &c. I have made diligent search for the index to book 2 of liens and mortgages, but cannot find it. I found the index to book 1 of this series for the year 1871, and also the index from 1876 to the end of the series. The defendant also contends that he entered into an agreement with plaintiff, to give plaintiff a certain amount of cotton in satisfaction of his mortgage, and that he did so deliver to the plaintiff the cotton. The evidence shows that Robert Austin did give some cotton to the plaintiff, but it was for rent of the land. Therefore, I find as matter of fact:

I. That on the 13th day of February, 1872, John Goff and William W. Goff made and delivered to plaintiff their promissory note in writing, and thereby promised to pay to plaintiff the sum of $152.10 on or before the 1st of November, 1872, and if not paid at maturity, then to bear interest at two per cent. per month.

II. That at the date of said note, and as collateral for the payment of said note, the said John Goff and W. W. Goff, together with Sarah Yates and Margaret Goff, did grant, bargain, sell, and release, by way of mortgage to the said plaintiff, the land described in the complaint.

III. That said mortgage was, on the 13th day of February, 1872, recorded in the clerk's office for Kershaw County, in lien and mortgage book No. 2, pages 356 and 357.

IV. That there is remaining due and unpaid upon said note and mortgage up to date of this report the sum of $335.40.

V. That part of the mortgaged premises were, subsequent to the date and recording of said mortgage, sold and conveyed by the said John Goff, W. W. Goff, Sarah Yates, and Margaret Goff to the defendant, who is now in possession of the premises described in the complaint.

That the defendant, Robert Austin, rented the land in question from plaintiff, and paid the rent in cotton for the years 1885, 1886, and 1887, but refused to pay rent in 1888, and has not paid any since.

I conclude as matter as law:

I. That the defendant, Robert Austin, had constructive notice of the mortgage of John Goff and others to J. A. Armstrong, and bought the land subject to said mortgage.

II. That the probate of the mortgage in question is sufficient, and that it was not necessary for the affidavit to have been signed by the deponent.

III. That the condition of the mortgage having been broken, the property should be sold, the equity of redemption barred, and the proceeds of sale applied to the payment of the mortgage debt.

The defendant excepts to the report of the master on the following grounds:

1. That the master erred in holding that Robert Austin rented the land in question from plaintiff, such conclusion being irrelevant to the issue, unwarranted by the allegations of the complaint, and contrary to the evidence.

2. That the master erred in holding that Robert Austin had constructive notice of the mortgage of John Goff and others to J. A. Armstrong, and bought the land subject to said mortgage, as said mortgage was recorded in an im-

proper book, and no proof was adduced to show that said mortgage was ever indexed as required by law.

3. That the master erred in holding that the probate of the mortgage in question was sufficient, and that it was not necessary for the affidavit to have been signed by deponent, as the evidence showed that there was no name signed to said affidavit, and that there was no jurat affixed thereto, in that there was no seal, and the name of no officer authorized by law to administer oaths, and that said affidavit is inherently insufficient in itself.

4. That the master erred in his third conclusion of law, because it would be inconsistent and illegal if one, any or all of the exceptions in the premises are correct.

The decree is as follows:

This is an action for foreclosure of a mortgage on real estate. The cause was heard by me on defendant's exceptions to the report of the master, wherein he decided in favor of the plaintiff, and held that the mortgage should be foreclosed and the property sold. The testimony on both sides is meagre and unsatisfactory, and some of it, offered by the plaintiff, was inadmissible, but not objected to. The complaint alleges that on 13th February, 1872, John Goff and William W. Goff made and delivered to this plaintiff their promissory note for $152.10, to mature 1st November, 1872, with interest at two per centum per month after maturity. That as collateral for the payment of said note, the said John and William Goff, along with Sarah Yates and Margaret Goff, mortgaged to the plaintiff the land in question, some 200 acres. That said mortgage was duly proved and recorded, the mortgage and the recording being of even date with the note. That two payments were made on said note, $45 on November 12, 1872, and $100 on March 9, 1875. That the mortgaged premises were, subsequent to the date and recording of said mortgage, sold and conveyed by the said John Goff, W. W. Goff,

Sarah Yates, and Margaret Goff to the defendant, who is now in the possession of said premises.

Austin, the defendant, admits that the parties named above, sold and conveyed the land to him, or rather "a part of the tract of land," and he avers "that he was a purchaser for valuable consideration, without legal notice of any prior encumbrance, the proper index in the office of the register of mesne conveyance for Kershaw County relating to real estate not showing that any mortgage on said tract of land had been recorded in the proper books of said office." And he "therefore denies that the mortgage set forth in the complaint was properly or duly recorded," and "denies that he had legal notice of the same." For a further defense, he alleges that he learned of plaintiff's claim in 1885, and that he agreed to pay him three bales of cotton to satisfy said claim; and that he did pay the three bales in full satisfaction of plaintiff's claim, paying one bale in 1885, one bale in 1886, and one in 1887.

The evidence before the master fails to show at what time or on what terms the defendant entered into possession; but the complaint alleges that he purchased and had a conveyance from the makers of the mortgage "subsequent to the date and recording of said mortgage." The plaintiff, in his testimony, admits the payment of the cotton, but says it was paid him as rent. If such be the case, no evidence is adduced to show when the plaintiff ceased to regard the defendant as a purchaser in possession, and to regard him as a tenant. He says, "I never received anything from him myself from 1871 to 1885. Mr. McDowall did" (his agent). My view of the case, however, makes it unnecessary to clear up the confusion as to the payment of cotton, or to decide whether it was paid as rent or as satisfaction of the plaintiff's mortgage claim. The plaintiff's allegation that the land was sold and conveyed to the defendant subsequent to the date and recording of the mortgage, leaves only one question to be decided, viz: Was the defendant, Austin, a subsequent purchaser for valuable con-

sideration without notice? Indeed, the question may be framed more simply still—thus: Was the defendant a subsequent purchaser without notice? For no issue is raised as to the consideration. The master held that the defendant must be charged with constructive notice. From this conclusion of law, I am compelled to dissent.

The mortgage in question was a mixed mortgage—a lien and a mortgage—embracing a lien on crops, a lien on mules, and a lien on real estate. It was an agricultural lien, a chattel mortgage, and a mortgage of real estate, all in one. It was executed in 1872 (according to the evidence and the pleadings, although on its face it says 1871). At that time the law with reference to recording required that a book of a certain size be used, and that the proof must be recorded with the writing, and that to the records indexes should be prepared in books of a size prescribed. The law also required that conveyances of real estate should be recorded in books kept for that purpose. See Revised Statutes 1872, chapter on Register Mesne Conveyance, sec. 5, page 148. The mortgage shows that it was filed February 13, 1872, and "recorded same day in lien and mortgage book No. 2, pages 356 and 357." The report of the master shows that there was no index to this "Book No. 2," while there was to "Book No. 1" and others. There is no evidence that it was recorded in the book kept for the recording of conveyances of real estate. All that is shown by the testimony is that it was recorded in "Lien and Mortgage Book No. 2," to which there was no index. As a mortgage of real estate it surely should have been recorded in the book kept for that purpose. But it is urged that being a mixed mortgage it was proper and sufficient to record it in the lien and mortgage book. This view I cannot assent to. It is held that when a mortgage includes both real and personal property, it should be recorded both as a mortgage of realty and a chattel mortgage. See 20 Am. & Eng. Enc. of Law, 558.

The position of the subsequent purchaser is to be considered. When he contemplates purchasing a tract of land,

and desires to be informed as to prior encumbrances, does the law require him to look in the books of record of agricultural liens and chattel mortgages? Is it not sufficient that he inspect the records of mortgages or conveyances of real estate in books required by law to be kept for that purpose? It must be great injustice and an undue and unauthorized stretching of the law of notice to hold that the defendant, Austin, is to be charged in conscience with constructive notice of the Armstrong mortgage. Had the defendant been purchaser of one of the mules, covered by the same mortgage, the case might be different.

In addition to the foregoing ground, the defendant excepts to the finding of the master, that the probate of the mortgage was sufficient. This exception must be sustained, and the master's report overruled on this ground also. Endorsed on the mortgage is the form of an affidavit of one of the witnesses to the mortgage, the late Wm. M. Shannon, Esq., but it is not signed by Mr. Shannon. And the *jurat* is signed only "C. Shiver, Clerk," in handwriting entirely different from the "C. Shiver, Clerk," which follows the endorsement of the filing and recording; yet both endorsements bear the same date—13th February, 1872. Assuming that one "C. Shiver" was clerk of the court at that time, it is assuming too much to say that the "C. Shiver" of the *jurat* is his signature. There is no proof that it is his signature, and no evidence as to which of the two signatures is his. Nor does it appear that the writer was clerk of the court; simply "Clerk;" not even "C. C. P.;" and there is no seal. It may be that the signature of Mr. Shannon is not necessary to make the affidavit sufficient, as seems to be the holding of the Supreme Court in *Fuller* v. *Missroon,* 35 S. C., 331. It may be that the failure to affix the seal to the signature of the clerk of the court would not prevent due probate. It may be that a court may take judicial notice of the fact, that in 1872 one "C. Shiver" was clerk of the court for Kershaw County. Still, I cannot hold that the mortgage in question was duly and sufficiently probated

when the *jurat* is signed only "C. Shiver, Clerk," without any testimony that such was the signature of the "C. Shiver" who may have been clerk of the court.   In the absence of the signature of the affidavit especially, there should be clear proof that the affidavit was made before the officer authorized by law to administer oaths and take affidavits in such cases.   There is no such proof.

It is, therefore, ordered, adjudged, and decreed, that the report of the master herein be, and the same is hereby, overruled.   Ordered, further, that the complaint be dismissed, with cost to the defendant.

From this decree the plaintiff appeals, on following exceptions:

1. That his Honor erred in holding that the mortgage of plaintiff was not properly recorded, and was not constructive notice to the defendant.

2. That his Honor erred in holding that there is no evidence that the book in which the said mortgage was recorded was a book kept for the record of mortgages of real estate.

3. That his Honor erred in holding that the said mortgage was not properly probated for purposes of record.

4. That his Honor erred in holding, in effect, that he would not take judicial notice that C. Shiver was clerk of the court at the time of the record of the mortgage, and in holding that his signature, "C. Shiver, Clerk," was not a sufficient attestation of the affidavit.

5. That his Honor erred in holding that there was no evidence that the signature to the affidavit was in the handwriting of C. Shiver, the clerk, and in partly basing his decree on that ground, when no such question was made before the master, or in the defendant's exceptions to the master's report, and it was never questioned before the master that the signature was that of C. Shiver, the clerk of the court.

6. That his Honor erred in overruling the master's report and dismissing the complaint.

*Messrs. J. T. Hay* and *W. D. Trantham*, for appellant.

*Mr. B. B. Clark*, contra.

Sept. 9, 1895. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The only question presented by this appeal is whether the mortgage sought to be foreclosed in this action was duly recorded so as to affect the defendant, a subsequent purchaser of the mortgaged premises, with constructive notice of said mortgage.

In the complaint it is alleged, "that said mortgage was duly proved and, on the 13th day of February, A. D. 1872, recorded in the clerk's office for Kershaw County, in the mortgage book No. 2, pages 356 and 357." To this allegation the defendant, in his answer, responded as follows: "This defendant avers that he was a purchaser of a part of the said tract of land for a valuable consideration, without legal notice of any prior encumbrance on the same, the proper index in the office of the register of mesne conveyance for Kershaw County relating to real estate not showing that any mortgage on said tract of land had been recorded in the proper books of said office. This defendant, therefore, denies that the mortgage set forth in the complaint was properly or duly recorded in the office of the clerk for Kershaw County, and that he had legal notice of the same." The case was referred to the master, who made his report, sustaining the validity of the mortgage, and recommending that the mortgaged premises be sold and the proceeds applied to the payment of the mortgage debt, the amount of which was ascertained in his report. To this report the defendant excepted, upon the grounds set out in the "Case," and the case was heard by his Honor, Judge Benet, upon the report and exceptions thereto, who rendered judgment, overruling the master and dismissing the complaint.

From that judgment plaintiff appeals, upon the several grounds set out in the record. We think it due to the parties, as well as to the Circuit Judge, that the report of the master, together with the exceptions thereto, as well as the decree of the Circuit Judge and the grounds of appeal therefrom, should be incorporated in the report of the case.

It is very obvious that, if the case should be made to turn upon the only issue (so far as this appeal is concerned) presented by the pleadings, the only question to be decided would be, whether the failure to index (if, indeed, there was such failure) would be fatal to the validity of the recording of the mortgage so far as to affect subsequent purchasers with constructive notice thereof. For, in the complaint, it is distinctly alleged that the mortgage was duly recorded on the day of its date, and that allegation is not denied in the answer, except in the form above quoted, which is based solely upon the ground of the failure to index, as the defendant says that he, "*therefore*," denies that the mortgage was duly recorded—that is, for that reason alone is the validity of the recording denied. So that our first inquiry is, whether the alleged failure to index is fatal to the validity of recording. So far as we are informed, we have no direct decision upon that question in the State. We must, therefore, resort to the aid of reason and authorities elsewhere. In the first place, it will be observed that statutes requiring mortgages and like papers to be recorded, so as to operate as notice to subsequent cseditors or purchasers, contain no provision requiring such records to be indexed. That requirement is found in another statute prescribing the duties of registers of mesne conveyances and clerks of court in the counties where such clerks are *ex officio* registers. It would, therefore, seem that when a paper required to be recorded, in order to operate as notice, has been spread upon the books of the proper office, all the requirements of the statute have been complied with; and the fact that the clerk or register has failed to comply with the provisions of *another statute* re-

quiring such officer to keep an index of such books, should not affect the validity or effect of the record. There is nothing in the statute making the indexing any part of the recording; and, therefore, the failure of the officer to perform a duty imposed upon him by a separate statutory provision, while it may subject him to an action, at the instance of a party who may suffer by his default, yet it can not affect the validity or effect of the recording. In support of these views, we have been able to find two cases from other States in which the point has been distinctly decided: *Bishop* v. *Schneider*, 46 Mo., 472; 2 Am. Rep., 533; and *Chatham* v. *Bradford*, 50 Ga., 327; 15 Am. Rep., 692. So that we think that, even if the record of the mortgage in question was not indexed, it would still, if properly recorded, operate as constructive notice.

But we do not think that it has been made to appear in this case that the record of this mortgage was never indexed. The master certainly does not find that as one of the facts of the case. All that he says upon the subject is: "I have made diligent search for the index to book 2 of liens and mortgages (the book in which the endorsement on the original mortgage shows it was recorded), but cannot find it." It may be, for all that appears, that there was such an index, which has either been lost or misplaced.

While, as we have said, this disposes of the only issue, so far as the present appeal is concerned, which is raised by the pleadings, yet as other objections were made to the record of the mortgage, which, though overruled by the master, were sustained by the Circuit Judge, we will proceed to consider them.

The first of these objections seems to be that the mortgage was not recorded in the proper book. The certificate which is endorsed upon the mortgage, which was received in evidence without objection, is, after a statement of the names of the parties, and the nature of the paper, in the following form: "Filed Feb. 13th, 1872.

Recorded same day in lien and mortgage book No. 2, pages 356 and 357. Examined and certified by me," and signed "C. Shiver, Clerk." This objection was overruled by the master but sustained by the Circuit Judge. Sec. 1 of chap. CXX. of the Rev. Stat. 1872, p. 548–9, only required that a mortgage of personal property should be recorded in the office of the register of mesne conveyances, without specifying in what book such record should be made, except that in the county of Richland such a mortgage must be recorded in the office of the Secretary of State; and by sec. 2 of chap. 82 of the Rev. Stat. of 1872, p. 422, a mortgage of real estate was only required to be recorded in the office of register of mesne conveyances, without specifying in what book such record should be made. This was the law at the time of this transaction, and by that law must its validity be tested. It was not until ten years afterwards, when the law was amended by the act of 1882, 17 Stat., 1053, by requiring mortgages of real and personal estate to be recorded in different books. It seems to us, therefore, that this being a mixed mortgage, covering both real and personal property, was recorded in the proper book under the law as it then stood.

The next objection was that the mortgage was not properly probated and could not, therefore, be properly recorded. There is no doubt under the express terms of the statute, sec. 5, chap. 23, Rev. Stat. of 1872, p. 188, that no paper can be properly recorded until its execution "shall first be proved by affidavit of a subscribing witness taken before some officer competent to administer an oath"—*Woolfolk* v. *Graniteville Manf. Co.*, 22 S. C., 332. The affidavit to prove the execution of this mortgage and endorsed thereon purports to have been made by one of the subscribing witnesses in the usual form, and sworn to before "C. Shiver, Clerk," but the affiant does not appear to have signed the affidavit. This does not invalidate the affidavit, as may be seen by reference to 1 Am. & Eng. Encyclopædia of Law, p. 311, and the cases there cited,

6—45

as well as the case of *Fuller* v. *Missroon*, 35 S. C., 314, unless there is a statute or rule of court requiring the signature of the affiant; and no statute or rule of court has been brought to our attention, making such requirement. The affidavit endorsed on the mortgage was sufficient to warrant its record, as the clerk before whom it was taken is, certainly, an officer competent to administer an oath—indeed, is expressly made so by sec. 15, of chap. 22, Rev. Stat. of 1872, p. 180. This objection cannot, therefore, be sustained. The Circuit Judge bases his conclusion, in part, at least, upon a point not raised before the master, and, so far as appears, not touched upon in the argument before him on the exceptions to the master's report, and the point, therefore, was not properly before him. *Griffin* v. *Griffin*, 20 S. C., 486. It may be that if the point referred to—that is, the supposed variance in the handwriting of the signature, "C. Shiver, Clerk," to the certificate of the record of the mortgage, and that of the same signature to the affidavit proving the execution of the mortgage—such apparent variance might have been fully explained. But this point was not only not made before the master or passed upon by him, but, on the contrary, the mortgage, with these endorsements thereon, was received in evidence without objection. At all events, we think it clear, under the case just cited, that there was error in considering a point not raised before the master nor passed upon by him, and not raised by any exception to the master's report.

We are of the opinion, therefore, that the judgment of the Circuit Court should be reversed; but, as there is one issue raised by the pleadings—that of payment of the mortgage debt—which was not determined by the Circuit Judge, as, under the view which he took of the case, it was not necessary for him to do, the case must go back to the Circuit Court for the determination of that issue, and for such further proceedings as may be necessary, under the views herein announced, in case the issue of payment should be determined adversely to the defendant.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to the Circuit Court for such further proceedings as may be necessary, under the views herein set forth.