17340

PEGGY JEAN HOUSER REAVES, by her Guardian ad litem Hugh Smith, and MARY HEAD WILLIAMS, Respondents, v. MAE LILLIE HEAD STONE and NORA HEAD, Appellants

(99 S. E. (2d) 729)

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Appellants,*

*Messrs. H. E. Yarborough, Jr., W. T. McGowan, Jr.,* and *John L. McGowan,* of Florence, *for Respondents,*

August 21, 1957.

STUKES, Chief Justice.

This is an action in ejectment. The questions submitted on appeal relate only to the claims of the defendants, who are the appellants, to betterments, and to contest of their liability for rent by way of offset against the value of the betterments, as allowed by the trial court.

W. B. Head died intestate in August, 1935, seized and possessed of a small farm of ten acres in Florence County that had upon it a rough dwelling, built by him and in which he and his family had made their home for fifteen years. His surviving heirs at law were his widow and five infant children, the oldest of whom was a son then about 16 years

old; one of them, who is one of the respondents, was still a minor when this action was brought. Heretofore the widow and three of the children conveyed their interests in the land by general warranty deeds to the respondent Mary Head Williams, who is another of the children of the intestate. At the time of the death of the latter taxes on the land were owing and in December, 1936, the county attempted to sell the land for delinquent taxes in the name of the decedent, instead of in the names of the true owners; and bid was entered in the name of decedent's brother, B. L. Head, who later obtained deed and took and retained possession of the property. He died intestate in 1945. The defendants, now appellants, his widow and child, who are his heirs at law, continued in possession.

The foregoing facts were alleged, *inter alia,* in the complaint which sought adjudication of respondents' title, that the tax deed be declared void and cancelled and they let into possession; and for judgment for the use, rent and profits of the land derived by appellants and their predecessor from their possession and occupancy of it. In the answer of appellants they pleaded adverse possession and the statutes of limitations; the answer further contained the following, which was denominated "a fifth defense": "That if the tax deed sought to be set aside by the plaintiffs is defective, which defendants deny, then the defendants have a lien upon the premises in question for all improvements made thereon by the defendants and by the defendants' ancestor, B. L. Head, and the defendant Nora Head as Administratrix of the Estate of B. L. Head asserts this lien for any and all improvements made thereon."

The action was referred generally to the master, presumably by consent, to take and report the testimony and his conclusions of fact and law, which he did. Upon argument before him appellants conceded the invalidity of the tax sale and deed, the inapplicability of the statutes of limitations because of the minority of some of the heirs and that the respondents are the owners of the land, subject to the claim

of appellants for betterments. It was correspondingly conceded by respondents that appellants are entitled to reimbursement for taxes paid by their ancestor and by them in the aggregate amount of $83.95, in addition to the sum of $69.56 paid upon the delivery of the tax deed.

The master found that the then seventeen-year-old son of W. B. Head, the oldest child, accompanied his uncle, B. L. Head, to the tax sale, along with the step-son in law of the latter. Arrangement between them, if any, was in dispute. The son of the decedent testified that his uncle informed him of, and invited him to, the sale and told him, quoting from the testimony: "If I would come in and bid it in, nobody would bid against me and he would hold the place for us"; and he, the witness, made the bid, with his uncle standing beside him; but he did not pay the amount of the bid, presumably his uncle did. He further testified that years later he talked to his uncle about getting the property back and was told that it would then take $1,400.00 to "redeem" it because that amount of improvements had been put upon the property; and his uncle never claimed the property as his own.

The step-son in law of B. L. Head testified for appellants that he attended the tax sale with the others and heard Mr. Head try to induce his seventeen-year-old nephew, the son of the decedent-taxpayer, to pay the taxes, but he declined and Mr. Head said, quoting: "If you ain't going to keep it, I'll bid it in myself," which he or Attorney Royall (now deceased) did. The witness did not know whom Mr. Royall represented at the sale. (There was testimony that he represented the widow of the decedent in other matters.) This witness also testified that two or three times after Mr. Head had bought the land at the tax sale he told his nephew that, quoting, "he could still get it if he wanted it."

The master concluded that respondents' contention that B. L. Head took title as trustee for the benefit of the heirs of his brother was not established for lack of clear and con-

vincing testimony. Further reference to the master's conclusions in this connection will be made later herein.

He found that appellants were entitled to betterments as follows: "Clearing land and stumps, $950.00; building three flues in house, $105.00; roofing house, $150.00; flooring and ceiling house, $200.00; installing brick piers under house, $75.00; installing water pipe or plumbing, $25.00, making a total of $1,505.00." (It is noted that it was not determined how much the land was "made better" by these improvements. Code of 1952, Sec. 57-408. *Harman v. Harman,* 54 S. C. 100, 31 S. E. 881. *Smith v. Hanna,* 215 S. C. 520, 56 S. E. (2d) 339.)

Respondents were allowed rent only upon the house, this at the rate of $12.00 per month from 1944, aggregating $1,800.00; rental for the newly cleared, cultivated acreage was denied perforce Code, Sec. 57-409. Interest was added on the taxes paid by appellants' ancestor and by them which made the aggregate of such and the betterments, $1,788.91, which was practically offset by the house rent charged against appellants. (There may be a slight discrepancy in these figures, which we attribute to the master.) Because of this balance of claims the master concluded as folows: "It is unnecessary to decide the question of whether one putting improvements on land where his knowledge of the title was as ample as was the defendants' predecessor in this case is entitled to an allowance for betterments." He recommended decree of the court that the tax deed is void and adjudging respondents to be the owners of the land and entitled to possession.

Appellants and respondents excepted to the report of the master. The exceptions were overruled save that the allowance to appellants for land clearing was reduced by the sum of $50.00, leaving their total allowance for taxes and betterments at $1,738.91. In all other respects the report was confirmed, and it was decreed by the court accordingly. The respondents did not except to the decree and appellants' ex-

ceptions relate only to betterments and to their liability for offset for house rent, as has been said.

By pleading betterments in their answer appellants followed Section 57-407 of the Code which provides in part as follows, applicable to the facts of this case: "* * * and the defendant may also set up a claim against the plaintiff for so much money as the land has been increased in value in consequence of improvements or betterments made by any person under or through whom he claims, if it be shown that the defendant actually believed he was taking a good title in fee simple thereto at the time of the alleged taking thereof."

The distinctions between the foregoing Sec. 57-407 and the present Sec. 57-401 were pointed out in *Tumbleston v. Rumph,* 43 S. C. 275, 21 S. E. 84, 88. The above quoted portion of Sec. 57-407 was an amendment of it in 1917, 30 Stat. 392. The subject is thus further confused since Justice McIver, dissenting, said in the *Tumbleston case* that the law of betterments "has been left in some confusion." However, it is not necessary to endeavor to clarify it for the purpose of the disposition of the instant appeal. *Tumbleston's case* was cited and followed in *Salinas v. C. Aultman,* 45 S. C. 283, 22 S. E. 889. Justice Blease had occasion to review the several pertinent code sections in *Howard v. Kirton,* 144 S. C. 89, 142 S. E. 39.

Appellants' claim for betterments, which was pleaded in their answer and has been quoted above, contained no allegation that at the time the betterments were made by their ancestor or by them he or they believed at the time that his or their title to the land was good in fee, or that at the time appellants acquired title by inheritance from him they believed that they were taking good title in fee. Nor was there any evidence to establish such allegations, if they had been made. Apt allegations and proof were necessary to authorize the award of any sum for betterments. *Templeton v. Lowry,* 22 S. C. 389. On the contrary, the master found from the evidence that appellants' ancestor was, quoting from the master's report, "cognizant of such

facts at the time he took title that he knew his title was at best a questionable one. * * * He paid only $69.56, and he knew at the time that the land rightfully belonged to the widow of his deceased brother and to five minor children, the oldest of whom was only seventeen years of age." This holding of the master that appellants' ancestor was cognizant of such facts when he took title that he knew his title was at best a questionable one was quoted with approval by the court in the judgment on appeal, and there is no exception. We are compelled to conclude that under the pleadings, evidence, factual findings and governing statutes appellants were not entitled to any amount for betterments; but respondents have not appealed from the allowance thereof. (In their brief they explain that a money judgment in their favor against appellants could not be collected.) By the same token appellants' appeal must fail. Their claims for additional allowances for betterments are without merit simply because they are entitled to no amount for betterments. And their contention that they should not have been charged with rental of the house, because the improvement of it by their predecessor made it of value, is likewise without merit. He and they are entitled under the record to no benefit (which this would be) because of his and their improvements of the property. The judgment will be affirmed under Rule 4, Section 8, of this court, which provides that affirmance may be upon any ground that appears in the record.

> The interesting historical background and philosophy of the betterment acts are contained in the opinion by Chief Justice Simpson in *Lumb v. Pinckney*, 21 S. C. 471, in which our act was upheld against constitutional attack. It was pointed out that the act does not attempt to give the improving claimant the costs of the improvements, but only such amount as they are found to have increased the value of the premises, and this refers to the value at the time of the recovery of the premises by the true owner. That authority indicates, and many others hold, that the right of one dispossessed of realty to the value of betterments is

purely statutory and remedy is available only upon a following of the statutes and upon proof of facts encompassed within the terms of them. Manifestly, these requirements were not met in this case. *Hall v. Boatwright,* 58 S. C. 544, 36 S. E. 1001. *Bethea v. Allen,* 101 S. C. 350, 85 S. E. 903. (Apparently the last cited decision prompted the amendment of 1917, *supra.*) *Howard v. Kirton, supra,* 144 S. C. 89, 142 S. E. 39.

No injustice results to appellants from affirmance. They and their predecessor have been in wrongful possession of the land for about twenty years, during which they have improved the property at a cost estimated by their witness at $1,455.00, and paid taxes which, with interest thereon, total $279.36. During some of the years they occupied the property as their home, having taken possession promptly after the tax sale; and during the remainder of the long period they rented it to others for substantial amounts, for which they are not being made to account to the owners. In the vernacular, they have done pretty well.

Affirmed.

TAYLOR, OXNER, LEGGE and Moss, JJ., concur.

PER CURIAM.

On Petition for Rehearing

PER CURIAM

By petition for rehearing appellants contend that their rights are governed by Section 65-2782 of the Code of 1952 which relates to a dispossessed purchaser at a tax sale and provides for a lien for the costs of all improvements made on the property during his possession. The statute was an act of 1940, 41 Stat. 1858, and it does not appear that it has been construed or applied in any former decision of this court. It was not mentioned in the pleadings or briefs in this case. On the contrary, the case was tried in the lower court as governed by the general betterments act, Sections 57-401 to 57-410, both inclusive, of

the Code, which was cited in the well-considered master's report and decree, and no exception taken. It is elementary that the theory upon which a case was tried cannot be changed for the purpose of appeal.

Nevertheless, appellants were allowed the "costs of all improvements", in accord with the estimates of such costs which were made by their witness. Therefore, they have fared as well in this respect as if the case had been tried, and argued on appeal, under Section 65-2782 and it had been applied conformably with appellants' construction of it. Under these circumstances it is unnecessary that it be construed for the purpose of this case, and we do not undertake to construe it.

The petition for rehearing is denied.

LEGGE, J., not participating.