0119

LIBERTY LOAN CORPORATION OF DARLINGTON, S. C., Respondent, v. General Lee MUMFORD, Carrie L. Mumford, Preston Robinson, Jr., Lillie Mae Robinson, and Aiken-Speir, Inc., Defendants, of which Aiken-Speir, Inc. is Appellant.

Appeal of AIKEN-SPEIR, INC.

(322 S. E. (2d)17)

Court of Appeals

*Mark W. Buyck, Jr.*, of *Willcox, Hardee, O'Farrell, McLeod, Buyck & Baker*, Florence, *for appellant*.

*Sam B. Mitchell, III*, of Myrtle Beach, and *Marvin P. Jackson, Jr.*, Florence, *for respondent*.

Heard Jan. 23, 1984.

Decided March 5, 1984.

Reheard June 19, 1984.

Decided Oct. 4, 1984.

CURETON, Judge:

This is an appeal from a circuit court order determining that the respondent, Liberty Loan Corporation of Darlington, S. C. (Liberty), had a first lien on property subsequently mortgaged to the appellant, Aiken-Speir, Inc. (Aiken-Speir), and permitting Liberty to foreclose its mortgage.[1] We reverse.

On January 9, 1976, defendant Mumford, owners of the subject property, executed a mortgage to Aiken-Speir which was duly recorded January 15, 1976, in the office of the Clerk of Court of Florence County.[2]

On June 25, 1976, the Mumfords executed a second mortgage to Liberty which was recorded July 2, 1976, in Mortgage Book A-160 at page 106. It was indexed in the Mortgagor Index Book under the subindex "Mul" on page 73 rather than subindex "Mum" on page 75.

On December 10, 1976, Aiken-Speir commenced a foreclosure action on its first mortgage, but did not name Liberty as a party to the suit. Aiken-Speir became the successful

---

[1] General Lee and Carrie L. Mumford, Preston Robinson, Jr. and Lillie Mae Robinson were defendants at trial but are not appellants.

[2] The Clerk of Court for Florence County maintains a direct index of the names of mortgagors and a cross-index of the names of mortgagees. The names of these parties are listed in an alphabetical index which is broken down in subindexes and under several letters of the alphabet.

bidder at the foreclosure sale and assigned its bid to the Secretary of Housing and Urban Development (HUD) who took title by deed recorded February 28, 1977.

On April 22, 1977, the clerk of court, at Liberty's request, reindexed Liberty's mortgage from page 73 to the correct page 75. Notations were made on each affected page to reflect the reindexing. Importantly, an asterisk was placed on page 75 at the sequential or chronological place on the page that the entry would have been made if properly subindexed on July 2, 1976.

On August 22, 1977, HUD deeded the property to Preston and Lillie Mae Robinson. They recorded their deed, then executed a mortgage to Aiken-Speir which was recorded on September 8, 1977.

On October 20, 1980, Liberty commenced foreclosure of its mortgage and named Aiken-Speir a party to the action. A dispute arose between these parties as to the priority of Liberty's mortgage relative to Aiken-Speir's mortgage. Aiken-Speir claimed its mortgage had priority because Liberty's mortgage was not properly recorded; that HUD therefore took title to the property free of Liberty's mortgage lien, and the Robinsons, as successors to HUD's interest, could mortgage the property to Aiken-Speir free of Liberty's lien.

Contrary to Aiken-Speir's contentions, Liberty asserted that its mortgage lien should have first priority because its lien was properly recorded and indexed. Liberty argued that the indexing statute required only that its mortgage be indexed under the letter "M". Any further subindexing, it contended, was only for the convenience of the public and was not required. Additionally, it argued that Aiken-Speir had record notice of its lien when Aiken-Speir took the mortgage from the Robinsons since Aiken-Speir could have discovered the lien by researching the corrected records.

The circuit court sustained the validity and priority of Liberty's mortgage against Aiken-Speir. On appeal the exceptions and additional sustaining grounds raised three issues: (1) whether Liberty's mortgage was validly indexed so as to constitute a first lien on the property; (2) whether the facts of this case were sufficient to put Aiken-Speir on actual or constructive notice of Liberty's mortgage; and (3) whether Aiken-Speir had a right to rely on the state of title at the time HUD purchased at the foreclosure sale. We

address these issues seriatim. We do not address Aiken-Speir's additional claim that the lis pendens statute precludes Liberty from enforcing its mortgage, because that issue was raised for the first time in Aiken-Speir's petition for rehearing.

## I.

Section 30-7-10, Code of Laws of South Carolina, 1976, requires that mortgages be recorded before they "shall be valid so as to affect the rights of subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable consideration without notice ...." *Bradley v. Guess*, 165 S. C. 161, 163 S. E. 466 (1932); *Gregory v. Ducker*, 31 S. C. 141, 9 S. E. 780 (1889). Likewise, Section 30-9-40 of the Code provides that indexing constitutes an "integral, necessary and inseparable part of the recordation of [a] deed, [or] mortgage ... but the recordation of a deed, mortgage or other written instrument shall not be notice as to the purport and effect thereof unless the filing of the instrument for record be entered as required hereby in the indexes."

The trial court found that Liberty's mortgage was properly indexed. Its order was premised primarily upon the North Carolina case of *Clement v. Harrison*, 193 N. C. 825, 138 S. E. 308 (1927), which held in pertinent part:

> The deed of trust in controversy was properly registered in a book containing real estate conveyances. It was indexed and cross-indexed under the letter "H," which is the "appropriate letter of the alphabet," and the cross-index referred to the page, title, or number of the book in which the instrument had been duly registered. The statute, upon its face, apparently, does not contemplate the division of the index into subheads. This division of the index into subheads has been installed in many counties for the convenience of parties who are compelled to examine the public records. Undoubtedly the method of subdividing the index is modern and efficient, and relieves the members of the profession, particularly, from a vast amount of unnecessary labor in passing upon titles; but, under the statute, as written, the only requirement is that the instrument should be indexed and cross-indexed under the "appropriate letter of the alphabet." This has

been done. As to whether the statute should be amended so as to include "catchheads" or subdivisions of the appropriate letter is not a matter for us to determine. It is our duty to construe the law as it is written.

We think the reasoning in *Clement* is inapplicable to the facts of this case. The North Carolina court made it clear that it was strictly construing the North Carolina statute which required only that the grantor's name be placed under the appropriate letter of the alphabet.[3] Our statute requires that the indexes be kept by "alphabetical arrangement." There is an important difference in the requirements of the two statutes.

While we have been unable to locate a case that defines ■■ "alphabetical arrangement," we think that this arrangement demands the consideration of not only the first letter of a name, but the exact arrangement and sequence of all letters of the name. Thus, where the clerk of court provides for subindexing of deeds or mortgages, a document is not properly indexed unless it appears in alphabetical arrangement under the proper subindex. For this reason we hold that Liberty's mortgage was not properly indexed before title passed out of the Mumfords.

## II.

Since Liberty's mortgage was not properly indexed, it ■ was not properly recorded. Section 30-7-10, Code of Laws of South Carolina, 1976, and the cases interpreting that section since it was amended in 1925 clearly require a mortgage to be properly recorded before it will furnish constructive notice to subsequent purchasers and lien holders. *Bradley v. Guess, supra; Gregory v. Ducker, supra.* Pre-1925 cases holding that an improperly indexed deed still operates as constructive notice are no longer the law in this jurisdiction. *See Armstrong v. Austin,* 45 S. C. 69, 22 S. E. 763 (1895);

---

[3] See 1924 North Carolina Consolidated Statute Section 3561 (Supp. 1927). We note that in 1929 the North Carolina General Assembly responded to the implicit invitation of the *Clement* court by amending its statute to mandate that where "there has been installed an indexing system having subdivisions of several letters of the alphabet, a registered instrument shall be deemed to be properly indexed only when the same shall have been indexed under the correct subdivision of the appropriate letter of the alphabet." 1929 N. C. Sess. Laws, Ch. 327, Sec. 2; *Dorman v. Goodman,* 213 N. C. 406, 196 S. E. 352 (1938).

*Greenwood Loan & Guarantee Association v. Childs,* 67 S. C. 251, 45 S. E. 167 (1903); *Mitchell v. Cleveland,* 76 S. C. 432, 57 S. E. 33 (1907).

### III.

Even though Liberty's lien was not properly indexed, Liberty nevertheless argues that HUD and its successors in interest and those claiming under these successors had inquiry notice of its lien. We disagree. Because Liberty's lien was not properly recorded until April 22, 1977, HUD became a bona fide purchaser for value without notice when it received title to the property on February 28, 1977. *Cruger v. Daniel,* 16 S. C. Eq. 157 (1841); *Archer v. Kelley,* 194 Ga. 117, 21 S. E. (2d) 51 (1942); 92 C. J. S. *Vendor and Purchaser* Section 322 (1955). HUD's successors in interest thereafter stood in the same position as HUD even if they had notice of Liberty's lien. *Goodwin v. Harrison,* 231 S. C. 243, 98 S. E. (2d) 255 (1957); *Southern Railway Co. V. Carroll,* 86 S. C. 56, 67 S. E. 4 (1910); *Foster v. Bailey,* 82 S. C. 378, 64 S. E. 423 (1909); 77 C. J. S. *Sales* Section 296 (1952). As stated in *Foster v. Bailey, supra,* "whenever in a succession of purchasers you reach one who is innocent and purchases in ignorance, the title is thenceforth sanctioned." *Id.* at 382, 64 S. E. 423.

The Robinsons, as successors in interest to HUD's bona fide title, took the property free of Liberty's lien and could therefore mortgage the property to Aiken-Speir free of such lien. The fact Aiken-Speir could have discovered Liberty's reindexed lien in September, 1977, when it received its mortgage from the Robinsons is of no significance. It had a right to rely on the state of title as it existed when HUD purchased the property at the foreclosure sale. Thereafter, only such encumbrances placed against the property by owners within the chain of title would affect Aiken-Speir's lien.

Accordingly, the order of the trial court is

Reversed.

BELL, J., concurs.

SHAW, J., dissents.

SHAW, Judge (dissenting):

In its brief and at the initial hearing of this case, Aiken-Speir argued not only that the original indexing was improper and that it could rely on the proper recording of mortgages under the sub-indexes of each letter of the alphabet but also that it had no duty to conduct another title examination before accepting a mortgage on the property on September 7, 1977. This court then held Aiken-Speir could have, by the exercise of due diligence, discovered the properly re-indexed mortgage and thus had record notice of its existence. *See Liberty Loan v. Aiken-Speir,* 322 S. E. (2d) 17 (S. C. App. 1984).

Following the issuance of that opinion, Aiken-Speir petitioned for a rehearing, contending the lis pendens statute, Section 15-11-20 of the 1976 South Carolina Code of Laws, governed the outcome of this case. This petition was granted despite the fact this statute, and the issues raised thereby, was not pled at the trial level nor raised by exception on appeal. Trial courts are obligated to construe the pleading liberally to discern issues marginally pled so that substantial justice is done between the parties. *Manning v. Dial,* 271 S. C. 79, 245 S. E. (2d) 120 (1978). However, this court is bound by the record and exceptions. Issues not raised at the trial and not timely preserved by a proper exception cannot be considered for the first time on appeal. *Whittington v. Ranger Insurance Co.,* 261 S. C. 582, 201 S. E. (2d) 620 (1973); *Murphy v. Hagan,* 275 S. C. 334, 271 S. E. (2d) 311 (1980); *Crocker v. Crocker,* 314 S. E. (2d) 343 (S. C. App. 1984); *Todd's Ice Cream v. South Carolina Employment Security Commission,* 315 S. E. (2d) 373 (S. C. App. 1984).

The majority opinion does violence to the above well settled rule of law. Also, the petition for rehearing was granted in violation of an equally well settled rule. It is firmly established that if questions presented by the petition for rehearing were not properly raised by any exception on appeal, they cannot be considered on rehearing. *Jennings v. Clover Leaf Life & Casualty Co.,* 146 S. C. 41, 143 S. E. 668 (1928); *Darby v. Southern Ry. Co.,* 194 S. C. 421, 10 S. E. (2d) 465 (1940); *Rogers v. Rogers,* 221 S. C. 360, 70 S. E. (2d) 637 (1952). The theory upon which a case is tried cannot be changed for the purposes of appeal. *Bramlet v. Young,* 229 S. C. 519, 93 S. E. (2d) 873 (1956); *Reaves v. Stone,* 231 S. C. 628, 99 S. E. (2d) 729 (1957).

Here, the petition for rehearing was based on a statute not raised nor considered at the trial nor preserved by exception

on appeal. Yet, the petition was granted. Incredibly, the majority opinion makes no mention of Section 15-11-20 which, admittedly, would have been relevant had it been raised at the trial level. It is a denial of Justice to Liberty Loan to allow a rehearing based on a statute asserted for the first time in the petition therefor and then to reverse the decision on other grounds.

The "other grounds" on which the majority opinion is based were also not litigated at the trial nor raised on appeal. The cases cited for the proposition that "whenever in a succession of purchasers you reach one who is innocent and purchases in ignorance, the title is therefore sanctioned" all involve mortgages or deeds *unrecorded* at the time of the subsequent transaction. That simply is not the situation here. Liberty Loan's mortgage was recorded, albeit improperly. There is a great difference between an unrecorded mortgage and an improperly recorded one. The neglect of a party in failing to record is readily distinguishable from the negligence of the Clerk of Court in improperly recording. This notwithstanding, had Aiken-Speir conducted a title search when it received its mortgage, the prior lien would have been discovered.

It is grossly unfair to twice place Liberty Loan in the position of having to meet a defense not raised at the trial. Liberty Loan never had the opportunity to contest the grounds relied on in the majority opinion. Accordingly, I would affirm.