730 S.E.2d 282

ATLANTIC COAST BUILDERS AND CONTRACTORS,
LLC, Respondent,

v.

Laura LEWIS, Petitioner.

No. 27044.

Supreme Court of South Carolina.

Heard Jan. 7, 2011.

Re-filed May 16, 2012.

Hemphill P. Pride, II, of Columbia, for Petitioner.

John P. Qualey, Jr., and Thomas Calvin Taylor, both of Hilton Head Island, for Respondent.

Justice HEARN.

Atlantic Coast Builders and Contractors, LLC brought an action against its landlord, Laura Lewis, for negligent misrepresentation, unjust enrichment, and breach of contract. Atlantic also sought a return of the security deposit it paid pursuant to its lease with Lewis. The master-in-equity entered judgment in favor of Atlantic, and the court of appeals affirmed. *Atlantic Coast Builders & Contractors, LLC v. Lewis,* Op. No. 2009–UP–042 (S.C. Ct.App. filed Jan. 15, 2009). We granted certiorari.

Our original opinion affirmed the court of appeals, *Atlantic Coast Builders & Contractors, LLC v. Lewis,* 396 S.C. 479, 722 S.E.2d 213, 215 (2011), and this matter is before us again on a petition for rehearing. Upon further review, we grant the motion, dispense with further briefing and oral argument, and substitute this opinion for our original one. We now affirm the court of appeals' decision in part and reverse it in part.

## FACTUAL/PROCEDURAL BACKGROUND

On March 28, 2003, Lewis agreed to lease certain property she owned in Beaufort County, South Carolina to Atlantic. The lease was for a term of twelve months, with $3,500 in rent

due per month. As relevant to this case, the lease also provided as follows:

> 2. Use. Lessee shall use and occupy the premises for Building & Const. office. The premises shall be used for no other purpose. Lessor represents that the premises may lawfully be used for such purpose.

> . . . .

> 5. Ordinances and Statutes. Lessee shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force, or which may hereafter be in force, pertaining to the premises, occasioned by or affecting the use thereof by Lessee.

> . . . .

> 14. Lessor's Remedies on Default. If Lessee defaults in the payment of rent, or any additional rent, or defaults in the performance of any other covenants or conditions hereof, Lessor may give Lessee notice of such default and if Lessee does not cure any such default within 10 days ... then Lessor may terminate this lease on not less than (30) thirty days' notice to Lessee. . . .

> 15. Security Deposit. Lessee shall deposit with Lessor on the signing of this lease the sum of [t]hree thousand five hundred and 00/100 [d]ollars ($3,500) as security for the performance of Lessee's obligations under this lease, including without limitation the surrender of possession to Lessor as herein provided.

Atlantic subsequently took possession of the premises and began operating them as a building and construction office. Additionally, Atlantic made several alterations to the building, including repairing the ceiling and interior walls, replacing the flooring and electrical wiring, pressure washing the exterior, installing a telephone system, and erecting an exterior sign. In accordance with the terms of the lease, Atlantic also made rental payments for April and May 2003.

In May 2003, however, Atlantic learned that the property's zoning effectively prohibited all commercial uses. After receiving notice and warnings from Beaufort County that its use of the property was in violation of the zoning ordinance, Atlantic ceased paying rent under the lease. Yet, it did not surrender possession of the premises until July of that year, at

the earliest. Atlantic subsequently brought this action against Lewis for negligent misrepresentation, unjust enrichment, breach of the lease, and breach of the covenant of quiet enjoyment.[1] Furthermore, Atlantic's complaint sought a return of its security deposit, which Lewis contended she retained because Atlantic remained on the premises without paying rent.[2]

The master found for Atlantic on all causes of action, awarding Atlantic $6,660.79 in damages, representing the expenditures Atlantic made to improve the premises and specifically excluding those improvements the master did not believe unjustly enriched Lewis. The master made no findings regarding the security deposit in his order. Cross motions for reconsideration under Rule 59(e), SCRCP, were filed. In particular, Atlantic moved for the master to include its security deposit of $3,500 in the calculation of damages. Lewis did not respond to Atlantic's motion, and the court modified its award to include this amount.

On appeal, the court of appeals affirmed pursuant to Rule 220(b), SCACR. *Atlantic Coast Builders,* Op. No. 2009–UP–042. We granted Lewis's petition for a writ of certiorari.

---

1. Lewis counterclaimed for breach of contract, and the master denied her relief. Although Lewis has raised this issue on appeal, we find it abandoned as the argument in her brief is purely a recitation of facts, devoid of any citation to legal authority, with the summary conclusion that Atlantic breached the lease. *See* Rule 208(b)(1)(D), SCACR; *First Sav. Bank v. McLean,* 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (finding the failure to provide arguments or cite to authority in support of argument constitutes abandonment of issue on appeal).

2. Lewis denied Atlantic's entitlement to the security deposit in her answer. Moreover, the following exchange took place during the trial between Atlantic's counsel and Lewis's property manager:
    Q. When did you send the notice of default to the Plaintiff regarding the alleged breaches of the lease?
    A.... I wanted to know if since they had been apprised that they needed to move when they were going to leave the building since they hadn't paid rent, they were still there we couldn't rent it to anybody else and they hadn't paid rent. They were still there in July.
    ....
    Q. You said you did not return the security deposit, where is that-where are those funds now?
    A. The security deposit? Well they were in arrears with the rent, the security deposit went to the owner.

## ISSUES PRESENTED

I.  Did the court of appeals err in affirming the master's award of damages to Atlantic for negligent misrepresentation and breach of contract?

II. Did the court of appeals err in affirming the master's return of the deposit to Atlantic?

## LAW/ANALYSIS

## I.  NEGLIGENT MISREPRESENTATION AND BREACH OF CONTRACT

■ Lewis first argues the court of appeals erred by affirming the master's entry of judgment against her for negligent misrepresentation and breach of contract. We do not reach the merits of Lewis's argument as we find it procedurally barred by the two-issue rule.

■ "Under the two issue rule, where a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become law of the case." *Jones v. Lott*, 387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010). In the present case, the master found for Atlantic on all three causes of action: negligent misrepresentation, breach of contract, and unjust enrichment. However, Lewis appealed only the findings of liability for negligent misrepresentation and breach of contract, not unjust enrichment. Accordingly, there is a ground for liability from which no appeal was taken, and our consideration of Lewis's arguments is barred by the two-issue rule.

The Chief Justice would not find that the two-issue rule applies in this case. The thrust of her argument is that the master's order does not award damages for unjust enrichment, correctly noting that the actual expenditures made by Atlantic are not a proper measure for unjust enrichment. *See Barrett v. Miller*, 283 S.C. 262, 264, 321 S.E.2d 198, 199 (Ct.App.1984) (finding a party could not be unjustly enriched with improvements to real property by more than the increase in the property's fair market value). Thus, in her view, the master did not enter judgment in favor of Atlantic on its unjust enrichment claim and no unappealed theory of liability exists to trigger the two-issue rule.

■ However, our review of the record shows the master intended to award damages for all causes of action, including unjust enrichment. In fact, he went so far as to specifically state he was excluding certain expenditures from his award because they did not unjustly enrich Lewis. While his calculation of damages may have been incorrect, an unappealed ruling, right or wrong, is the law of the case. *See Buckner v. Preferred Mut. Ins. Co.*, 255 S.C. 159, 160–61, 177 S.E.2d 544, 544 (1970). Therefore, the master awarded damages to Atlantic based on a theory of unjust enrichment, and because the master made this alternate finding of liability from which Lewis did not appeal, the two-issue rule bars us from considering Lewis's arguments regarding negligent misrepresentation and breach of contract.

■ In the Chief Justice's view, applying the two-issue rule to this case is an "over-zealous application" of our longstanding error preservation rules because she does not believe the rule's application is clear. We certainly share her concerns about a hypertechnical application of a procedural bar to appellate arguments, but error preservation has been a critical part of appellate practice in this State for a long time, serving to ensure, as noted by the Chief Justice, that we do not reach issues which were not ruled upon by the trial court. We therefore agree that we are not precluded from finding an issue unpreserved even when the parties themselves do not argue error preservation to us. In fact, a rule which would permit such an "appeal by consent" is contrary to the very core of our preservation requirement: "Issue preservation rules are designed to give the trial court a fair opportunity to rule on the issues, and thus provide us with a platform for meaningful appellate review." *Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.*, 368 S.C. 342, 373, 628 S.E.2d 902, 919 (Ct.App.2006).

■ Nevertheless, these rules must also be applied consistently and not selectively. If our review of the record establishes that an issue is not preserved, then we should not reach it. This is so regardless, to use the Chief Justice's terms, of the "life-blood litigant or criminal defendant" before us. However, this is not a "gotcha" game aimed at embarrassing attorneys or harming litigants, but rather is an adherence to

settled principles that serve an important function. While it may be good practice for us to reach the merits of an issue when error preservation is doubtful, we should follow our longstanding precedent and resolve the issue on preservation grounds when it clearly is unpreserved. Here, we do not believe the existence of this procedural bar is questionable and would place no weight on the fact that neither the parties nor the court of appeals raised it. Therefore, the two-issue rule precludes our consideration of Lewis's arguments.

## II. SECURITY DEPOSIT

Lewis argues next that the court of appeals erred in affirming the master's return of the security deposit. We agree.

■ As a threshold matter, the court of appeals held, and Justice Pleicones ultimately agrees, that this issue was never raised to the master and therefore is not preserved for review. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). A review of the record, however, reveals this not to be the case. In its complaint, Atlantic requested a return of its security deposit, which Lewis denied in her answer. Furthermore, Lewis's property manager testified that Lewis kept the security deposit because Atlantic remained on the property for two months after it breached the lease by failing to pay rent. This issue accordingly was raised to the master, and the court of appeals erred in finding otherwise.[3] Then, when prompted by Atlantic's Rule 59(e) motion after he candidly forgot to do so, the master ruled on this issue. Our core preservation requirements therefore have been met, and there is no procedural bar to us considering this question.

■ As to the merits of this issue, the lease provides the security deposit is "security for the performance of [Atlantic]'s obligations under this lease, including without limitation the surrender of possession to [Lewis] as herein provided." The

---

3. Thus, Atlantic did not raise a new issue in its Rule 59(e) motion. We therefore do not reach Justice Pleicones's contention that Lewis herself was obligated to file a Rule 59(e) motion regarding the security deposit to preserve it for review.

lease also states that upon Atlantic's failure to pay rent and cure the breach after receiving notice, Atlantic must surrender possession of the premises. Because it failed to do so, Lewis's property manager testified Lewis kept the security deposit, precisely as the lease permitted her to do. The master, however, found Lewis would be unjustly enriched if she kept the security deposit, but we cannot find any evidence to support this finding. While Lewis may have been unjustly enriched by receiving the benefits of the improvements Atlantic made to the premises, nothing suggests she was similarly unjustly enriched when she kept the security deposit she was wholly entitled to under the lease because Atlantic failed to pay rent. Atlantic's remaining claims of negligent misrepresentation and breach of contract similarly are not avenues to justify it getting the security deposit back; Atlantic lost it not because of any statements Lewis made or her alleged breach of the lease, but rather because it failed to surrender possession and stayed on the premises without paying rent. Accordingly, none of Atlantic's theories of recovery encompasses a return of the security deposit under these facts, and the master erred in including it in his calculation of damages.

In sum, we find the court of appeals erred in concluding this issue was not preserved for review. As to the merits, we hold Lewis is entitled to retain the deposit. We consequently reduce Atlantic's award by $3,500.[4]

---

4. We express no opinion regarding the Chief Justice's contention that Atlantic's lease was an illegal contract. That issue was never raised to the master, the court of appeals, or this Court, and we therefore do not address it. If a question is not presented for our review, we should not answer it no matter how much we may want to do so. For as former Chief Judge Alex Sanders famously wrote, "[A]ppellate courts in this state, like well-behaved children, do not speak unless spoken to and do not answer questions they are not asked." *Langley v. Boyter*, 284 S.C. 162, 181, 325 S.E.2d 550, 561 (Ct.App.1984), *quashed on other grounds*, 286 S.C. 85, 332 S.E.2d 100 (1985). This rule is not without exception, and we can set aside our preservation rules to find a contract illegal because we "will not 'lend [our] assistance' to carry out the terms of a contract that violates statutory law or public policy." *Ward v. W. Oil Co.*, 387 S.C. 268, 274, 692 S.E.2d 516, 519 (2010). However, the Chief Justice correctly acknowledges that whether a lease whose purpose is contrary to the applicable zoning regulations is void *ab initio* is a question of first impression in this State. Thus, we are not lending our assistance to an illegal agreement in this case because, as the law currently exists, the contract is not illegal. The situation before us

## CONCLUSION

For the foregoing reasons, we affirm the court of appeals as to the entry of judgment against Lewis for negligent misrepresentation and unjust enrichment. However, we reverse the court of appeals' conclusion that Lewis's entitlement to the security deposit is not preserved for review. On the merits of that issue, we reverse the master and reduce Atlantic's award by $3,500 to $6,660.79.

KITTREDGE, J. and Acting Justice G. THOMAS COOPER, JR., concur. TOAL, C.J., concurring in result in part and dissenting in part in a separate opinion. PLEICONES, J., concurring in part and dissenting in part in a separate opinion.

Chief Justice TOAL.

I concur in the result reached by Justice Hearn for the majority on the issue of the security deposit, and dissent from her majority on the issue of improvement costs. I take issue with the disposal of this case on issue preservation grounds. For reasons set forth below, I do not believe the "two-issue" rule precludes this Court from deciding whether the master-in-equity's award of improvement costs was valid. Additionally, I join Justice Hearn in disagreeing with Justice Pleicones's position that although Atlantic requested the return of the security deposit in its complaint and Lewis denied liability for returning it in her answer, the security deposit issue was nevertheless a "new issue" when Atlantic submitted its 59(e), SCRCP, motion. On the merits, I would vacate and dismiss this case on the ground that the lease agreement was an illegal contract.

In my opinion, an over-zealous application of appellate preservation rules denigrates the primary purpose of the judiciary, which is to serve the citizens and the business community of this state by settling disputes and promoting justice. To be clear, I do not discount the importance of our

---

therefore is not one where we would be enforcing a contract to do a criminal act, for example, which unquestionably is void *ab initio* under our law. In those circumstances, *Ward* correctly recognized that we may *sua sponte* invalidate the parties' agreement.

issue preservation rules. As an appellate court, we sit to review decisions of lower courts for error. As such, "it is axiomatic that an issue cannot be raised for the first time on appeal." *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998). However, I do not believe it is our place to scour the records before us for the purpose of avoiding issues or, even worse, to play a "gotcha" game with attorneys by showcasing their alleged mistakes, at the expense of their clients. This practice ignores the fact that behind every party name on a caption is a life-blood litigant or criminal defendant that depends on the court system to protect their economic and liberty interests. In light of my view, I believe that where the question of preservation is subject to multiple interpretations, any doubt should be resolved in favor of preservation. When the opposing party does not raise a preservation issue on appeal, courts are not precluded from finding the issue unpreserved if the error is clear. However, the silence of an adversary should serve as an indicator to the court of the obscurity of the purported procedural flaw.

The majority determined not to reach the merits of Lewis's first issue on appeal by invoking the "two-issue" rule. The master found Atlantic proved its claims of unjust enrichment, negligent misrepresentation, and breach of contract. However, the master based the award of $6,660.79 only on Atlantic's actual pecuniary loss, which is the appropriate measure of damages for negligent misrepresentation and breach of contract. *See Quail Hill, LLC v. Cty. of Richland*, 387 S.C. 223, 240, 692 S.E.2d 499, 508 (2010) (plaintiff must prove amount of pecuniary loss suffered as result of negligent misrepresentation); *Bensch v. Davidson*, 354 S.C. 173, 178, 580 S.E.2d 128, 130 (2003) (measure of damages for breach of contract is loss actually suffered by contractee as a result of breach). The proper measure of damages for an unjust enrichment claim is the amount of increase in the fair market value of the subject property due to the improvements made by the plaintiff. *See Stringer Oil Co., Inc. v. Bobo*, 320 S.C. 369, 372–73, 465 S.E.2d 366, 368–69 (Ct.App.1995) (finding the appropriate measure of owner's unjust enrichment was value of improvements to owner rather than the cost to the person producing the result). Thus, the focus of an unjust enrichment award is on the amount the owner is enriched, not the amount of actual

loss to the plaintiff. The record contains no evidence that the value of the subject property increased as a result of improvements made by Atlantic, and the master based damages only on the improvement costs expended by Atlantic. Lewis broadly requested both the court of appeals and this Court to reverse the master's award of damages. Therefore, it was unnecessary for Lewis to argue unjust enrichment on appeal because it had no bearing on the award of damages that Lewis prayed to have reversed. The "two-issue" rule was spotted by neither the court of appeals nor Atlantic. In my opinion, the existence of this preservation bar is questionable, and I elect to resolve that question in favor of preservation.

On the merits, I believe the court of appeals erred in affirming the master's award of damages for Atlantic. In my opinion, this lease was an illegal contract and, therefore, void and wholly unenforceable. As such, the parties were not entitled to relief under any legal theory, and in my opinion, the Court is constrained to leave the parties as we found them.

The lease agreed to by Lewis and Atlantic was entitled "Commercial Lease." The second clause of the lease states: "Lessee shall use and occupy the premises for Building and Constr. Office. The premises shall be used for no other purpose. Lessor represents that the premises may lawfully be used for such a purpose." In fact, the premises was not zoned for use as a commercial office, and therefore, the lease had no lawful purpose. It is no excuse the parties were unaware of the applicable zoning laws because "citizens are presumed to know the law and are charged with exercising 'reasonable care to protect their interests.'" *Ahrens v. S.C. Ret. Sys.*, 392 S.C. 340, 709 S.E.2d 54, 61 (2011) (quoting *Morgan v. S.C. Budget & Control Bd.*, 377 S.C. 313, 320, 659 S.E.2d 263, 267 (Ct.App.2008)); *see also Quail Hill, LLC v. Cty. of Richland*, 387 S.C. 223, 241, 692 S.E.2d 499, 509 (2010) (party not justified in relying on an incorrect statement from a zoning official because party could have referenced the Official Zoning Map to ascertain the correct zoning classification).

It is a well-settled principle of contract law that "a contract to do an act which is prohibited by statute, or which is contrary to public policy, is void, and cannot be enforced in a court of justice." *McConnell v. Kitchens*, 20 S.C. 430, 437–38

(1884); *see also Pendarvis v. Berry*, 214 S.C. 363, 369, 52 S.E.2d 705, 707 (1949) (" 'Men may enter into any agreements they please and, as between themselves, may either respect or disregard them. When, however, they are submitted to the courts for adjudication, they must be tested and governed by the law.' ") (quoting *Gilliland v. Phillips*, 1 S.C. 152 (1869)). This Court has never addressed the validity of a lease whose sole purpose is contrary to local zoning regulations. However, I believe where the only contemplated use of a lease is for a purpose prohibited by the applicable zoning regulations, the lease is illegal and wholly unenforceable. *See Cent. States Health & Life Co. of Omaha v. Miracle Hills Ltd. P'ship*, 235 Neb. 592, 456 N.W.2d 474 (1990) (holding that when a lease restricts the use of a premises to a single purpose that is prohibited by zoning regulations, that lease is unenforceable and relieves the parties of all obligations thereunder). As such, the parties must be left as the court found them. *See* 17A C.J.S *Contracts* § 362 (2011) ("As a general rule, both at law and in equity, a court will not aid either party to an illegal contract ... but leaves the parties where it finds them.").

Justice Hearn's majority opinion would have us interpret and enforce the lease simply because neither party argued the lease agreement was illegal. Under this theory, courts would be hamstrung to interpret contracts that are wholly illegal simply because the parties who seek relief under the contract do not suggest its illegality. Our jurisprudence supports that a court's authority to declare a contract void *ab initio* is impervious to our issue preservation rules:

> The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. *In case any action is brought which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it*, nor will they enforce any alleged rights directly springing from such contract.

*Jackson v. Bi–Lo Stores, Inc.*, 313 S.C. 272, 276, 437 S.E.2d 168, 170 (Ct.App.1993) (quoting *McMullen v. Hoffman*, 174 U.S. 639, 654, 19 S.Ct. 839, 43 L.Ed. 1117 (1899) (emphasis in original)). In *Ward v. West Oil Co., Inc.*, 387 S.C. 268, 692 S.E.2d 516, this Court specifically noted that issue preservation rules were "inapplicable as the Court will not 'lend its assistance to carry out the terms of a contract that violates

statutory law or public policy.' " *Id.* at 274,692 S.E.2d at 519. The Court then cited a number of other authorities that support the proposition that a court may void a contract as unenforceable regardless of whether the issue of the contract's legality was developed in lower courts. *Id.* at 274–75, 692 S.E.2d at 520 (citing *Hyta v. Finley,* 137 Idaho 755, 53 P.3d 338, 340–41 (2002) (holding that an appellate court could *sua sponte* raise issue of whether an underlying contract was illegal); *Parente v. Pirozzoli,* 87 Conn.App. 235, 866 A.2d 629, 635 (2005) (" 'It is generally true that illegality of a contract, if of a serious nature, need not be pleaded, as a court will generally of its own motion take notice of anything contrary to public policy if it appears from the pleadings or in evidence, and the plaintiff will be denied relief, for to hold otherwise would be to enforce inappropriately an illegal agreement.' ") (internal quotations omitted)). As it relates to issue preservation, courts of this state should operate as well-behaved children, but only when spoken to by well-behaved litigants. In this case, I do not believe the court can enforce, and thereby condone, a contract whose sole purpose is illegal.

The refusal of the courts to entertain litigation based upon an illegal contract can, at times, lead to inequitable results. However, as stated by Lord Mansfield in the landmark case of *Holman v. Johnson,* the illegality doctrine

is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this; *ex dolo malo non oritur action* (an action does not arise from a fraud). No Court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act.... It is upon that ground the Court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So if the plaintiff and defendant were to change sides, and the defendant was to bring his action against the plaintiff, the latter would then have the advantage of it; for where both are equally in fault, *potior est conditio defendentis* (stronger is the condition of the defendant, than that of the plaintiff).

*Holman* (1775) 98 Eng. Rep. 1120, 1121.

Accordingly, in my opinion, Atlantic is not entitled to recover damages in tort, contract, or in equity; and similarly, Lewis

cannot recover her counterclaim for attorney's fees and other associated costs. Leaving the parties as they were when litigation ensued, I would not compel Lewis to reimburse Atlantic for its improvement costs or return the security deposit. I would vacate and dismiss.

Justice PLEICONES.

I concur in part and dissent in part. I agree that the two issue rule precludes our review of Lewis's appeal of the judgment in Atlantic's favor. I further agree that the issue of the security deposit was raised by the pleadings, and that a defense witness testified to Lewis's rationale for not returning the deposit. I also agree that the master neglected to rule on the security deposit issue, that Atlantic filed a Rule 59(e) motion, that Lewis did not respond to this request, and that the master filed an amended order requiring Lewis to return the security deposit to Atlantic. Our rules of issue preservation require that where a trial judge rules upon a new issue in response to a party's Rule 59(e) motion, the other party must challenge that new ruling by making its own Rule 59(e) motion in order to preserve the issue for appellate review. *Coward Hund Constr. Co., Inc. v. Ball Corp.*, 336 S.C. 1, 518 S.E.2d 56 (Ct.App.1999); *Pelican Bldg. Ctrs. v. Dutton*, 311 S.C. 56, 427 S.E.2d 673 (1993). In my opinion, the issue whether the master erred in ordering Lewis return the security deposit is not before us as she made no Rule 59(e) motion challenging the master's amended order. *Coward Hund, supra; Pelican Bldg. Ctrs., supra.*

I would affirm the decision of the Court of Appeals.