**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

HSBC Bank of USA, National Association, as Trustee for the Holders of the Deutsche ALT-A Securities, Inc. Mortgage Loan Trust, Mortgage Pass-Through Certificates Series 2007-A4, assignee of Bank of America N.A., successor by merger to BAC Home Loans Servicing, L.P., f/k/a Countrywide Home Loans Servicing, Inc., Appellant,

v.

Clifford L. Ryba; Beverly Ryba; Regions Bank; First Federal Savings and Loan Association of Charleston, Citibank (South Dakota) N.A., and Carol Garfield Goldberg, Defendants,

Of whom Carol Garfield Goldberg is the Respondent.

Appellate Case No. 2016-001054

———————

Appeal From Charleston County
Mikell R. Scarborough, Master-in-Equity

———————

Unpublished Opinion No. 2019-UP-132
Heard October 3, 2018 – Filed April 10, 2019

———————

**AFFIRMED**

———————

Allen Mattison Bogan and Nicholas Andrew Charles,

both of Nelson Mullins Riley & Scarborough, LLP, of
Columbia; and Erica Greer Lybrand, of Rogers
Townsend & Thomas, PC, of Columbia, for Appellant.

James K. Holmes, of The Steinberg Law Firm, LLP, of
Charleston, for Respondent.

---

**PER CURIAM:**  HSBC Bank USA, N.A. (Bank) appeals the master-in-equity's order denying foreclosure on a note and mortgage entered into between its predecessor, Countrywide Home Loans Inc. (Countrywide), and Clifford and Beverly Ryba (the Rybas).  At the outset of the foreclosure action, Respondent Carol Goldberg intervened and claimed an interest in the property being foreclosed. Goldberg asserted an affirmative defense alleging that she was fraudulently induced into deeding her property to the Rybas, Countrywide was aware of the fraudulent activity, and because Bank stepped into the shoes of its predecessor, it was not protected under the shelter rule or as a holder in due course.  The master-in-equity ruled in favor of Goldberg.  On appeal, Bank argues (1) fraud is not a defense to the foreclosure action because the master's order does not contain any findings of fact that support a finding of fraud, (2) the holder in due course analysis was irrelevant because a finding of fraud was removed from the master's order, and (3) the master erred in requiring Bank to be a holder in due course to foreclose on the note and mortgage at issue because Bank's loan servicer could initiate a foreclosure action. We affirm.

"A mortgage foreclosure is an action in equity." *Hayne Fed. Credit Union v. Bailey*, 327 S.C. 242, 248, 489 S.E.2d 472, 475 (1997).  "In an appeal from an action in equity, tried by a judge alone, [the appellate court] may find facts in accordance with [its] own view of the preponderance of the evidence." *U.S. Bank Trust Nat'l Ass'n v. Bell*, 385 S.C. 364, 373, 684 S.E.2d 199, 204 (Ct. App. 2009).  "However, this broad scope of review does not require an appellate court to disregard the findings [of the master-in-equity] or ignore the fact that the [master-in-equity was] in [a] better position to assess the credibility of the witnesses." *Id*. (quoting *Pinckney v. Warren*, 344 S.C. 382, 387, 544 S.E.2d 620, 623 (2001)).  "Moreover, the appellant is not relieved of his burden of convincing the appellate court the [master-in-equity] committed error in his findings." *Id*. (quoting *Pinckney*, 344 S.C. at 387–88, 544 S.E.2d at 623).

I.    Fraud Defense

Bank argues fraud is not a defense to the foreclosure action because the master's order does not contain any findings of fact that support a finding of fraud. As an initial matter, we note that Bank **did not** appeal the master's findings of fraud. Instead, Bank maintains the master removed the finding that Bank and the Rybas had an agency relationship that would hold Bank vicariously liable for the Rybas' fraudulent conduct, as well as a finding that Bank had inquiry notice of any illegal recasting scheme perpetrated by the Rybas. Bank contends that because both grounds of fraud were removed from the order, it does not contain any findings of fraud. We disagree.

A review of the record reveals the master did not remove his findings of fraud from the order. The master found Goldberg proved that she was fraudulently induced into deeding her property to the Rybas and that Countrywide should have been on inquiry notice. Additionally, the master stated that if Countrywide had conducted an inquiry it would have discovered how Mr. Ryba obtained the property being mortgaged. This ruling was never removed from the order.

In Bank's motion for reconsideration, it argued Goldberg did not plead agency in her complaint and the master erred in ruling on this theory. The master granted Bank's motion in this regard and stated, "[Bank's] motion to alter, amend, or reconsider the order on the ground [Goldberg] did not plead agency is granted and agency, as an alternative sustaining ground of the [c]ourt's decision, is deleted." However, the master did not remove any portions of its findings of fraud or its finding that Countrywide was on inquiry notice of the fraudulent activity. Specifically, the master stated,

> Out of an abundance of caution, the [c]ourt grants [Bank's] motion to alter, amend, or reconsider its [o]rder to delete the references to the scheme being perpetuated as illegal recasting, however, the [c]ourt's finding the conduct constituted fraud stands and is sufficient to sustain the [c]ourt's order.

Additionally, in regard to Bank's motion to reconsider on the grounds that Goldberg failed to prove the elements of fraud by clear and convincing evidence, the master stated,

> The [c]ourt has reviewed the findings and the record…, and reaffirms those findings were established by clear and convincing evidence….The [c]ourt's [o]rder should be

amended to reflect that the elements of fraud were proved by clear and convincing evidence.

Therefore, it is evident from the record that the master did not remove his findings of fraud. Because Bank **did not** appeal the master's findings of fraud and the master did not remove them from the order, they have become the law of the case. *See Atlantic Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012) ("[A]n unappealed ruling, right or wrong, is the law of the case."); *Transp. Ins. Co. & Flagstar Corp. v. S.C. Second Injury Fund*, 389 S.C. 422, 431, 699 S.E.2d 687, 691 (2010) ("An unappealed ruling is the law of the case and requires affirmance."); *see also* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered [that] is not set forth in the statement of the issues on appeal.").

Additionally, Bank argues Goldberg failed to plead fraud against Bank in her complaint and presented evidence of fraud only against the Rybas. Goldberg maintains this argument is not preserved for appellate review because Bank failed to raise this issue at trial and the master-in-equity never ruled on this issue. We agree with Goldberg. Bank makes this argument for the first time on appeal. Therefore, this issue is unpreserved for appellate review. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). Nevertheless, Goldberg was not required to plead fraud specifically against Bank because as an assignee, Bank stood in the shoes of its assignor—Bank of America; and prior to Bank of America—Countrywide. *See Bank of Am., N.A. v. Draper*, 405 S.C. 214, 220, 746 S.E.2d 478, 481 (Ct. App. 2013) ("An assignee stands in the shoes of its assignor."). Goldberg always maintained that Bank's predecessors in interests had knowledge of the fraudulent acts perpetuated by the Rybas or had notice of Goldberg's claims on the property via the *lis pendens*.[1] Therefore, Bank stood in privity to those claims.

II.     Holder in Due Course

---

[1] A *lis pendens* "notifies potential purchasers that there is pending litigation that may affect their title to real property and that the purchaser will take subject to the judgment, without any substantive rights." *Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 17, 567 S.E.2d 881, 889 (Ct. App. 2002) (quoting 51 AM. JUR. 2D *Lis Pendens* § 2 (2000)); *see also Pipkin v. Fletcher*, 165 S.C. 98, 162 S.E. 774, 776 (1932) (indicating "one may not rely upon a purchase or [encumbrance] made after the filing of the lis pendens").

Bank maintains that "[t]he removal of fraud from the master's order renders the holder in due course argument irrelevant." Specifically, Bank maintains that the "master's removal of the fraud ruling from the order established that fraud was no longer an issue in the litigation and could not be used as a defense to the foreclosure action [] or to defeat a claim [that Bank is] a holder of the 2007 loan." We disagree.

Because the master's findings of fraud remained in his order, and Bank **did not** appeal the merits of the master's order—i.e., finding of fraudulent inducement by the Rybas; finding that Bank was not a bona fide purchaser for value; finding that Bank was not a bona fide purchaser of the note and mortgage without notice; finding that Bank was not entitled to the protections available to a holder in due course; finding that Countrywide was not a bona fide purchaser for value without notice and that Bank could not therefore benefit from the protections of the shelter rule—they are the law of the case. *See Dreher v. S.C. Dep't of Health & Envtl. Control*, 412 S.C. 244, 250, 772 S.E.2d 505, 508 (2015) ("[S]hould the appealing party fail to raise all of the grounds upon which a lower court's decision was based, those unappealed findings—whether correct or not—become the law of the case."); *Lewis*, 398 S.C. at 329, 730 S.E.2d at 285 ("[A]n unappealed ruling, right or wrong, is the law of the case."); *Transp. Ins. Co. & Flagstar Corp.*, 389 S.C. at 431, 699 S.E.2d at 691 ("An unappealed ruling is the law of the case and requires affirmance.").

As such, we address only the issues presented to us on appeal and referenced in the statement of issues. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered [that] is not set forth in the statement of the issues on appeal."); *see also Forest Dunes Assoc. v. Club Carib, Inc.*, 301 S.C. 87, 89, 390 S.E.2d 368, 370 (Ct. App. 1990) ("Every ground of appeal ought to be so distinctly stated that the reviewing court may at once see the point [that] it is called upon to decide without having to 'grope in the dark' to ascertain the precise point at issue." (quoting *Winter v. U.S. Fidelity & Guaranty Co.*, 240 S.C. 561, 568, 126 S.E.2d 724, 727 (1962))). We turn our attention to the relevancy of the master-in-equity's holder in due course analysis.

At trial, Bank maintained that it was a bona fide purchaser of the note and mortgage for value without notice, entitled to protection of the shelter rule, and, therefore, not subject to any claims or defenses by Goldberg. Bank argued that the mortgage was filed in accordance with section 30-7-10 of the South Carolina Code (2007). Section 30-7-10 provides, in pertinent part,

> All deeds of conveyance of lands . . . all contracts for the purchase and sale of real property, *all assignments*,

satisfactions, releases . . . generally all instruments in writing conveying an interest in real estate *required by law to be recorded in the office of the register of deeds or Clerk of court . . . are valid so as to affect the rights of subsequent creditors* (whether lien creditors or simple contract creditors), or *purchasers for valuable consideration without notice*, only from the day and hour *when they are recorded in the office of the register of deeds or clerk of court of the county in which the real property affected is situated*. In the case of a subsequent purchaser of real estate, or in the case of a subsequent lien creditor on real estate for valuable consideration without notice, *the instrument evidencing the subsequent conveyance or subsequent lien must be filed for record in order for its holder to claim under this section as a subsequent creditor or purchaser for value without notice, and the priority is determined by the time of filing for record.*

(emphases added). In order for Bank to qualify as a bona fide purchaser for value without notice pursuant to section 30-7-10, Bank had the burden of showing it (1) actually paid the full purchase price, (2) "purchased and acquired the legal title, or the best right to it," and (3) "purchased bona fide*, i.e.*, in good faith and with integrity of dealing, without notice of a lien or defect." *Spence v. Spence*, 368 S.C. 106, 117, 628 S.E.2d 869, 875 (2006). All three conditions must exist before the purchaser is put on notice of a title defect or other adverse claim, lien, or asserted interest in the property. *S.C. Tax Comm'n v. Belk*, 266 S.C. 539, 543–45, 225 S.E.2d 177, 179–80 (1976).

Ultimately, the master found that Bank did not meet its burden of proving it was a bona fide purchaser for value because Bank failed to submit evidence showing it paid value for the note and mortgage when they were received via assignment. The master also determined that Bank failed to prove that it was a bona fide purchaser without notice because the assignments were filed with the Charleston County Register of Mesne Conveyance (RMC)[2] office on May 21, 2012, which was after Goldberg filed the *lis pendens* on August 19, 2008. Because the assignments were filed after the *lis pendens*, Bank had statutory notice of Goldberg's claim. Once it was determined that Bank, by itself, could not qualify as a bona fide purchaser for

---

[2] The RMC office is now known as the Charleston County Register of Deeds office.

value without notice, Bank argued that it was entitled to the protections of the shelter rule.[3] Bank alleged that because its predecessor in interest, Countrywide, funded the note and mortgage before the *lis pendens* was filed, Bank stood in the shoes of Countrywide and was sheltered by Countrywide's protected status. This required an inquiry into whether Countrywide was a bona fide purchaser for value without notice. The master determined that Countrywide did pay value for the note and mortgage, but found that Countrywide was on inquiry notice of the fraudulent acts perpetuated by the Rybas to obtain title to the property at issue. Therefore, Countrywide was not a bona fide purchaser for value without notice, and consequently, Bank could not be afforded any more or less protection than what Countrywide possessed.

Article 3 of the UCC governs negotiable instruments such as the note at issue. Section 36-3-301 of the South Carolina Code (Supp. 2018) provides that the "person entitled to enforce" an instrument includes "(i) the holder of the instrument." Holder means "the person in possession of a negotiable instrument that is payable either to bearer or an identified person that is the person in possession." S.C. Code. Ann. § 36-1-201(21)(A) (Supp. 2018). A person other than a holder in due course "is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds." S.C. Code Ann. § 36-3-306 (Supp. 2018). However, "a holder in due course takes free of the claim to the instrument." *Id*. A "holder in due course" means the holder of an instrument if:

> (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

> (2) *the holder took the instrument (i) for value, (ii) in good faith*, (iii) without notice that the instrument is overdue or has been dishonored or that there is an

---

[3] *See* 77 AM. JUR. 2D *Vendor and Purchaser* § 412 (2016) ("The 'Shelter Rule' provides that one who is not a bona fide purchaser, but who takes interest in property from a bona fide purchaser, may be sheltered in the latter's protective status."); *see also Liberty Loan Corp. of Darlington, S.C. v. Mumford*, 283 S.C. 134, 140, 322 S.E.2d 17, 21 (Ct. App. 1984) ("[W]henever in a succession of purchasers you reach one who is innocent and purchases in ignorance, the title is thenceforth sanctified." (internal citations omitted)).

uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) *without notice of any claims to the instrument described in Section 36-3-306*, and (vi) without notice that any party has a defense or claim in recoupment described in Section 36-3-305(a).

S.C. Code Ann. § 36-3-302 (Supp. 2018) (emphases added).[4]

Here, the master's analysis of whether Bank was a holder in due course was relevant because such status would determine how Goldberg's claims affected its ability to foreclose on the property. If bank was a holder in due course then it would not be subject to Goldberg's claim on the property. *See* § 36-3-306 ("[A] holder in due course takes free of the claim to the instrument."). However, Bank was merely a holder of the note because it possessed and produced the original note. As merely a holder of the note, Bank was subject to Goldberg's claim of a property right in the note. *See* § 36-3-306 ("A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds[.]"). Because Bank was not a holder in due course—i.e., was not a holder who took the instrument for value, in good faith and without notice of any claims to the instrument—an inquiry into Countrywide's status as a holder in due course was necessary to address Bank's argument that it was protected under the shelter rule.

Lastly, Bank maintains that Goldberg was not the obligor of the note and mortgage and, therefore, could not assert this defense against Bank, who is the holder of the negotiable instrument. Goldberg contends this issue is unpreserved for appellate review because this is the first time that Bank alleges Goldberg lacked standing to raise a claim of fraud. We agree with Goldberg. A review of the record indicates that Bank did not challenge whether Goldberg could assert a claim of fraud

---

[4] Section 36-3-306 is entitled "Claims to instrument," and it provides, "A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds . . . . A person having rights of a holder in due course takes free of the claim to the instrument." Section 36-3-305(a) of the South Carolina Code (Supp. 2018) is entitled "Defenses and claims in recoupment," and it explains the defenses and claims that can be asserted.

or whether Goldberg lacked standing under section 36-3-305. Bank failed to raise the issue in any of its motions during trial or its motion for reconsideration. Thus, the issue is unpreserved for appellate review. *See Mathis v. Brown & Brown of S.C., Inc.*, 389 S.C. 299, 311, 698 S.E.2d 773, 779 (2010) ("In order for an issue to be properly preserved for appeal, it must have been both raised to and ruled on by the trial court.").

### III.    Loan Servicer

Bank contends the master erred in requiring Bank to be a holder in due course to foreclose on the note and mortgage because it was irrelevant to whether a loan servicer could foreclose on the note and mortgage. Bank maintains that it had standing to foreclose on the note and mortgage through its servicer, Specialized Loan Servicing (SLS), and that our courts have held that a loan servicer is able to maintain a foreclosure action. However, Bank makes this argument for the first time on appeal. Bank failed to present this argument at trial or in its motion for reconsideration. Furthermore, SLS was not a party to the foreclosure action but merely a witness for Bank. There is nothing in the record to indicate that SLS submitted a brief or a motion alleging it had standing to foreclose on the note or that it wanted to initiate its own foreclosure action. *See Draper*, 405 S.C. at 223, 746 S.E.2d at 482 (holding a servicer of a loan is a real party in interest and able to initiate a foreclosure). Thus, the issue is unpreserved for appellate review. *See* Mathis, 389 S.C. at 311, 698 S.E.2d at 779 ("In order for an issue to be properly preserved for appeal, it must have been both raised to and ruled on by the trial court.").

Accordingly, the decision of the master-in-equity is

**AFFIRMED.**

**LOCKEMY, C.J., and THOMAS and GEATHERS, JJ., concur.**